IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL J. SCHROEDER

        Plaintiff,

v.

BONANZA GOLD TRUCKING, LLC,
and JOHN PATRICK PATTON,

        Defendants.

Case No. 3:21-CV-00058-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Exclude Expert Testimony filed by Plaintiff Michael Schroeder (Docs. 50, 51). For the following reasons, the motion is granted in part and denied in part.

## LEGAL STANDARD

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014); *see also Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The *Daubert* standard applies to all expert testimony, whether based on scientific competence or other specialized or technical expertise. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

Federal Rule of Evidence 702 provides that expert testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under this rule, an expert witness may testify about a scientific issue in contention if the testimony is based on sufficient data and is the product of a reliable methodology correctly applied to the facts of the case. *Lyons v. United States*, No. 120-CV-01120-JMS-DLP, 2021 WL 3076482, at *1 (S.D. Ind. July 21, 2021) (citing *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010)). As such, a three-step analysis emerges as to admitting expert testimony. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). The Court must determine whether: (1) the witness is qualified; (2) the expert's methodology is scientifically reliable; and (3) the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *Id.*

The district court is the gatekeeper with respect to the screening of expert testimony in ensuring it is both relevant and sufficiently reliable. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). The "key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion; the inquiry must 'focus . . . solely on principles and methodology, not on the conclusions they generate.'" *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 595). "So long as the principles and methodology reflect reliable scientific practice, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

Finally, an expert must explain the methodologies and principles that support his or her opinion; he or she cannot simply assert a "bottom line" or *ipse dixit* conclusion. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)). "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). The district court possesses "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007)). "The critical inquiry is whether there is a connection between the data employed and the opinion offered." *Gopalratnam*, 877 F.3d at 781 (quotation omitted).

## DISCUSSION

Dr. Peter Anderson, an expert witness retained by Defendants Bonanza Gold Trucking, LLC and John Patton (collectively "Defendants"), specializes in orthopedic surgery (Docs. 51-3; 52-2, pp. 32-33). Dr. Anderson is certified by the American Academy of Orthopedic Surgeons (Docs. 51-3; 52-2, p. 92).

Schroeder urges the Court to exclude four categories of opinions offered by Dr. Anderson, arguing his opinions fail to meet the standard for admissibility required by

Federal Rule of Evidence 702 and *Daubert* because they fall outside Dr. Anderson's scope of practice, training, and experience (Docs. 50, 51). The four categories of opinions regard:

- radiofrequency ablations,
- medical billing,
- recreational drug use, and
- the position of Schroeder's pants after the crash or biomechanics.

In their response, Defendants do not oppose Schroeder's motion as to the third and fourth categories regarding recreational drug use and the position of Schroeder's pants after the crash or biomechanics (Doc. 52). The Court will, therefore, only address arguments related to Dr. Anderson's opinion testimony about radiofrequency ablations and medical billing.

## I.   Radiofrequency Ablations

Schroeder first argues that, while specializing in orthopedic surgery, Dr. Anderson typically treats patients for joint issues in the hip, ankle, and knee (Doc. 51-4, p. 34). Schroeder emphasizes that Dr. Anderson has not performed a spinal surgery in 30 years and that he has never performed a radiofrequency ablation procedure (*Id.* at pp. 35, 36 41, 72).

Defendants argue, on the other hand, that Dr. Anderson's testimony relating to radiofrequency ablations is based on his training and experience as a board-certified orthopedic surgeon, as well as his expertise in other spinal nerve injections, treatment of facet syndrome, and referring patients for similar types of treatment and pain management (Doc. 52-2, pp. 29, 34, 36, 44, 72-81, 97-98, 105-107). While Defendants

acknowledge Dr. Anderson does not perform radiofrequency ablations, they contend that Dr. Anderson has extensive experience with substantially similar spinal nerve injections, which also involve identifying the appropriate injection point and performing the injection (*Id.* at pp. 36, 105-107).

Certainly, a doctor's medical degree does not make him qualified to opine on all medical subjects. But a doctor need not be a specialist in a given field as long as he has the knowledge, training, and education to reach his conclusions. *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). Dr. Anderson is a board-certified orthopedic surgeon. While the majority of his patients present with hip, ankle, and knee issues, Dr. Anderson testified that he routinely treats patients with back pain and regularly performs spinal injections (Doc. 51-4, pp. 29, 36, 104-105). Dr. Anderson's experience with orthopedic surgery, facet syndrome, spinal injections, and referring patients out to be treated for back pain gives him an adequate basis to opine as to treatment options for injuries like Schroeder's, including radiofrequency ablations.

Further, Dr. Anderson performed a physical examination and reviewed Schroeder's medical index, surgery records, physical therapy notes, radiologic images, and other medical records. He appears to have applied his many years of experience in the field of orthopedic surgery in reaching his conclusions and assessing Schroeder's injuries and appropriate treatment. This is a sound, reliable methodology. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000) (finding expert's testimony admissible when he applied his experience to the medical records); *see also Hall v. Flannery*, 840 F.3d 922, 928 (7th Cir. 2016) (expert's opinions were based on sufficiently reliable methodology

when he based his conclusions on medical records, CT scans, medical notes, and deposition testimony).

Understanding typical treatment options for Schroder's injury will undoubtedly assist the jury in understanding the evidence and the necessity of radiofrequency ablation treatments as compared to other approaches or the appropriate frequency of such treatments.

Dr. Anderson's testimony in this respect passes *Daubert* muster. Schroeder may challenge Dr. Anderson's conclusions through "vigorous cross-examination [and] presentation of contrary evidence" at trial. *Daubert*, 509 U.S. at 596.

## II. Medical Billing of Radiofrequency Ablations

Next, Schroeder argues that Dr. Anderson does not have the appropriate training or experience to discuss medical billing in general, and more specifically, pricing related to the radiofrequency ablation procedure in Schroeder's life care plan. To support this contention, Schroeder points to Dr. Anderson's deposition testimony where he admits his lack of involvement in preparing bills or choosing pricing for the procedures at his own practice (Doc. 51-4, pp. 39-40). Moreover, Dr. Anderson has never been identified as an expert in the reasonableness of medical billing or qualified as a life care planner (*Id.* at pp. 32, 40, 43). Schroeder takes issue with the fact that Dr. Anderson has no experience pricing medical procedures in the Las Vegas area and that Dr. Anderson did not consult any other professional concerning ablation procedure costs (*Id.* at p. 83). Dr. Anderson also testified that he has never performed a radiofrequency ablation procedure nor has any other physician in his practice (*Id.* at pp. 36, 41, 72; Doc. 51-5).

Aside from his qualifications, Schroeder argues that Dr. Anderson based his opinion of ablation pricing solely on a physicians' fee reference guide, which he did not list as a source in his report. Schroeder asserts that Dr. Anderson's opinion on ablation procedure pricing only included the physician's fee but erroneously excluded additional costs (i.e., fees for the surgical center, fluoroscopy, sedation, anesthesia, or nursing) (*Id.* at pp. 41, 108).

Defendants rely on the same argument for radiofrequency ablation pricing as above. Essentially, they argue that Dr. Anderson's testimony relating to ablation pricing is based on his training and experience, especially with substantially similar spinal nerve injection and pain management referrals. Defendants also note that Dr. Anderson reviewed a physician's fee reference guide which provides average nationwide costs (Doc. 52-2, pp. 8-9, 40-41, 61-62, 94, 98, 108). This data, paired with Dr. Anderson's experience in referring patients out for pain management for similar injuries, according to Defendants, establish an appropriate basis for Dr. Anderson's opinion as to this topic.

Upon review, the Court agrees with Schroeder. During his deposition, Dr. Anderson conceded that he is not involved in medical billing at his own practice. He has also never performed the radiofrequency ablation procedure, nor do other physicians in his office perform such a procedure. While Dr. Anderson claimed to know the nationwide average cost of the procedure, he relied only on a physician's fee guide as to the average physician's fee for the procedure, only one component of calculating the whole cost. Based on his deposition testimony, Dr. Anderson lacks specialized knowledge with respect to medical billing, especially regarding radiofrequency ablation

procedures, that would assist the jury in determining whether the assessed costs, both past and future, are reasonable. Moreover, the Court cannot find that Dr. Anderson's testimony stems from reliable principles and methods in the area of medical billing, where he consulted one source that provided national averages as to a single factor of the overall cost. Accordingly, Dr. Anderson's testimony regarding the medical costs and billing of Schroeder's past and future radiofrequency ablation procedures must be excluded.

### CONCLUSION

For these reasons, the Motion to Exclude Expert Testimony filed by Plaintiff Michael Schroeder (Docs. 50, 51) is **GRANTED in part** as to radiofrequency ablation costs and billing. The motion is **DENIED in part** as to radiofrequency ablation treatment and alternatives generally. As a result, Dr. Anderson is barred from testifying at trial about billing and reasonable costs associated with radiofrequency ablations.

**IT IS SO ORDERED.**

DATED: September 20, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**